(C.D. 2269)

Louis Goebel
F. L. Kraemer & Co. } v. United States

United States Customs Court, Third Division

(Decided June 19, 1961)

*Barnes, Richardson & Colburn* (*Edward N. Glad* of counsel) for the plaintiffs.
*William H. Orrick, Jr.*, Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

Before Johnson, Donlon, and Richardson, Judges

Donlon, Judge: This protest concerns six giraffes from Mombasa, Kenya, East Africa, that arrived on September 21, 1956, at New York. There, they were entered as duty free, under the provision of paragraph 1607, Tariff Act of 1930, as wild animals intended for exhibition in zoological collections and not for sale or profit.

Notations on the entry indicated that four of the giraffes had been ordered for the San Francisco zoo and two for the Honolulu zoo. However, plaintiff supported duty-free entry with certain declarations (customs Form 3321) that showed the giraffes were delivered as follows: To the Zoological Society of San Diego, one female giraffe, ordered on July 12, 1956 (another giraffe, destined for the San Diego zoo, died en route, as mentioned later in this opinion); to the Houston Zoological Gardens, two reticulated giraffes, ordered in October 1956; and to the Honolulu zoo, one pair of giraffes, the date of order left blank. Such declarations are required by the Customs Regulations, 19 C.F.R., section 10.75. All orders were specified as made through Louis Goebel, dealer. (Exhibit 1.)

The New York collector liquidated as duty free the two giraffes for delivery to the Honolulu zoo. He classified the remaining four giraffes, as to which there was a variance between the entry papers and the accompanying customs declarations, as live animals, not specially provided for, dutiable at 7½ per centum ad valorem under paragraph 715 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802. Plaintiff claims these four giraffes should also be duty free under paragraph 1607.

The procedure for importing wild animals duty free under paragraph 1607 is prescribed by regulation. There is, first, section 12.26 (b) of the Customs Regulations (19 C.F.R., § 12.26(b)), which provides that wild ruminants, that is, cud-chewing animals, "may be imported only under a permit from the Bureau of Animal Industry, United States Department of Agriculture." Next, there is section 92.4(c) of the Department of Agriculture regulations (9 C.F.R., § 92.4(c)), which provides that "permits for the importation of wild animals, such as * * * giraffes * * *, will be issued only if such animals are intended for exhibition purposes in a zoological park *previously approved*" [emphasis supplied] on the basis of inspection by an authorized representative of the Department. Finally, there is section 10.75 of the Customs Regulations (19 C.F.R., § 10.75), which provides as follows:

10.75 Wild animals and birds; zoological collections.—When wild animals or birds are claimed to be free of duty under paragraph 1607(b), Tariff Act of 1930, as amended, there shall be filed in connection with the entry a declaration of the ultimate consignee on customs Form 3321, showing that the animals or birds were specially imported pursuant to negotiations conducted prior to importation for the delivery of animals or birds of a named species meeting agreed specifications of reasonable particularity and that they are intended at the time of importation for public exhibition in a collection maintained for scientific or educational purposes and not for sale or for use in connection with any enterprise conducted for profit. The fact that an animal or bird may have been sent on approval shall not preclude free entry under paragraph 1607(b) when it is actually accepted as a part of the zoological collection and so exhibited.

There appears to be no question of compliance in this case with the first two of these regulatory procedures. A permit of the Department of Agriculture for importation of all six giraffes was issued under date of August 2, 1956. The permit is number 5651 and authorizes the collector of customs at New York to permit Louis Goebel to land and quarantine six giraffes out of Mombasa, Kenya, East Africa, to arrive on or about September 15 to October 15, 1956. (Exhibit 2.)

The collector, on liquidation, decided that there was noncompliance, as to four giraffes, with the requirement, under section 10.75 of the Customs Regulations, that with the entry there shall be filed a declaration showing that these animals, delivered to the San Diego and Houston zoos, "were specially imported *pursuant to negotiations conducted prior to importation*." [Emphasis supplied.] This decision is the issue raised by plaintiff's protest.

On trial in Los Angeles, plaintiff adduced the testimony of Louis J. Goebel, dealer in wild animals, for whose account the giraffes were imported, and of Paul Leland Breese, director of the Honolulu zoo. Defendant did not cross-examine them and offered no evidence.

Mr. Goebel testified that he maintains a wild animal farm in Thousand Oaks, Calif., and deals in wild animals for zoos, circuses, and the Government. He is familiar with the regulations covering importation of wild animals for zoos and, particularly, the Department of Agriculture regulation, section 92.4(c), *supra*.

Mr. Goebel further stated that all six giraffes were imported pursuant to informal negotiations with Mr. Foster, representing a company which sells the beverage known as "Hi-C Drink," and that this company wished to donate the giraffes to zoos; that Mr. Foster first designated two giraffes each for the Honolulu zoo, San Francisco zoo, and Los Angeles zoo; that this information was necessary before the Department of Agriculture would issue its permit for importation of the giraffes; that these were the first giraffes to come out of Mombasa since the Department of Agriculture had approved Mombasa as an embarkation quarantine station; that, upon arrival in New York, the giraffes were quarantined for 30 days at the United States Quarantine Station in Clifton, N.J.; that, while in the New Jersey quarantine station, Mr. Foster gave new instructions that two giraffes were to be delivered each to the Honolulu zoo, Houston zoo, and San Diego zoo; that the Department of Agriculture was notified of this change; that, in fact, two giraffes were delivered to the Honolulu zoo and two to the Houston zoo, and only one giraffe was delivered to the San Diego zoo because the other giraffe destined for San Diego died en route of strangulation of the cud, as determined by examination at San Diego.

Paul Leland Breese testified that he signed customs Form 3321; that the Honolulu zoo received two giraffes as a result of his informal negotiations with Mr. Foster of Hi-C Drink; that he had recommended Mr. Goebel as dealer, because he knew Mr. Goebel's reputation for reliability. His testimony has little, if any, relevance to the giraffes of this protest consigned to the Houston and San Diego zoos.

Defendant filed no brief. Plaintiff urges that while section 10.75 is a reasonable regulation, under the general authority conferred on the Secretary of the Treasury to make rules and regulations necessary to carry out the administrative provisions of the Tariff Act of 1930, 19 U.S.C., section 1624, the application of the regulation to the facts in this case would be unreasonable and would effect a result contrary to the intent of Congress.

Section 10.75 does not fall in the class of those specific regulations authorized by Congress, observance of which is mandatory as a condition precedent to duty-free entry. *Maple Leaf Petroleum, Ltd.* v. *United States*, 25 C.C.P.A. (Customs) 5. However, general regulations (under section 624 of the Tariff Act of 1930), which are reasonable and necessary to the administration of a statute, may not be ignored. *United States* v. *Canada Dry Ginger Ale, Inc.*, 34 C.C.P.A. (Customs) 12 C.A.D. 337.

In this case, it appears that the regulation, section 10.75, was not ignored. Indeed, there was an earnest effort, made by an agent experienced in such matters, to comply with the regulations applicable to the importation of these giraffes. The question is whether a change made by the importer, as to certain of these giraffes, in the American zoos to which the giraffes were to be delivered, was such a noncompliance with the applicable regulations as to deprive the importer of classification under paragraph 1607. That paragraph provides as follows:

(b) Wild animals and birds intended for exhibition in zoological collections for scientific or educational purposes, and not for sale or profit. [As amended Aug. 8, 1953, ch. 397, § 10(g), 67 Stat. 513.]

It may be observed that in paragraph 1607(a), relative to the importation of teams of horses owned by emigrants, Congress specified that duty-free entry of such teams should be "under such regulations as the Secretary of the Treasury may prescribe." As to animals imported under paragraph 1607(a), regulation is specifically authorized by Congress.

There is no such specific regulation authorized by Congress in paragraph 1607(b) as to the importation of wild animals (e.g., giraffes). The fact is that these giraffes were imported for exhibtion in zoological collections, and they were delivered to zoos for exhibition, except for the giraffe that died in transit to the zoo. Nonetheless, the pur-

pose of importation of that giraff, as of the others, was the purpose which Congress prescribed in paragraph 1607 (b) as the condition of duty-free entry.

In *Morrill* v. *Jones*, 106 U.S. 466, the regulation with which that litigation was concerned was a regulation specifically authorized by Congress. The Supreme Court, however, said:

The Secretary of the Treasury cannot by his regulations alter or amend a revenue law. All he can do is to regulate the mode of proceeding to carry into effect what Congress has enacted. In the present case we are entirely satisfied the regulation acted upon by the collector was in excess of the power of the Secretary. The statute clearly includes animals of all classes. The regulation seeks to confine its operation to animals of "superior stock." This is manifestly an attempt to put into the body of the statute a limitation which Congress did not think it necessary to prescribe. Congress was willing to admit, duty free, all animals specially imported for breeding purposes; the Secretary thought this privilege should be confined to such animals as were adapted to the improvement of breeds already in the United States. In our opinion, the object of the Secretary could only be accomplished by an amendment of the law. That is not the office of a treasury regulation.

The protest is sustained. Judgment will be entered accordingly.