**PREMO PHARMACEUTICAL LABS., INC.**

v.

**UNITED STATES.**

**C. D. 2977; Protest 63/18342–4234–62.**

United States Customs Court,
First Division.

April 20, 1967.

Siegel, Mandell & Davidson, New York City (Murray Sklaroff, New York City, of counsel), for plaintiff.

Barefoot Sanders, Asst. Atty. Gen. (Richard J. Kaplan and Arthur E. Schwimmer, New York City, trial attorneys), for defendant.

Before OLIVER, WATSON, and RAO, JJ.

WATSON, Judge.

The merchandise involved in the case at bar consists of certain tetracycline hydrochloride, which was assessed for duty at the rate of 12½ per centum ad valorem under paragraph 5 of the Tariff Act of 1930 under the provision therein for "medicinal preparations."

Plaintiff, in this protest, claims that the merchandise in question is properly entitled to entry free of duty under the provisions of title 10, United States Code, section 2383, providing for free entry of emergency purchases of war material abroad by a military department. There is no dispute in this case as to the nature or identity of the involved merchandise. (R. 3–4).

The pertinent statutes herein involved are as follows:

*Classified under:*

Paragraph 5, Tariff Act of 1930, as modified by T.D. 52739:

\* \* \* all medicinal preparations \* \* \* all the foregoing obtained naturally or artificially and not specially provided for (except \* \* \*) ..........12½% ad val.

*Claimed under:*

Title 10, United States Code, section 2383:

The secretary of a military department may make emergency purchases of war material abroad. Material so purchased shall be admitted free of duty.

Section 10.104(c) (1), Customs Regulations of 1943, as amended:

Collectors may admit articles free of duty under the Act of August 10, 1956 (10 U.S.C. 2383), only upon receipt of the certificate executed by a duly authorized officer or civilian official of the appropriate department

\* \* \*.

It appears that the merchandise in question is a nonalcoholic medicinal preparation having therapeutic properties, chiefly used for medicinal purposes. (R. 4). The record further discloses that the plaintiff ordered the merchandise from a supplier in Italy by cable dated December 1, 1960 (invoice No. 234/60). It was imported on December 27, 1960, for plaintiff's own account (entry No. 496007), and delivered to plaintiff on January 3, 1961 (exhibit 3). Thereafter, on January 24, 1961, the Department of the Navy contracted to purchase from plaintiff 25,000 bottles of tetracycline hydrochloride tablets, 0.25 grams each (exhibit 6–B). It further appears that the merchandise at bar comprises 130 kilos (kilograms) of the total of 630 kilos of tetracycline hydrochloride used by plaintiff in fulfilling the contract. The remaining 500 kilos were ordered from the supplier in Italy and delivered to plaintiff as follows (exhibit 3):

| | |
|---|---|
| 2/27/61 | 100 kilos |
| 3/8/61 | 200 kilos |
| 3/22/61 | 100 kilos |
| 4/5/61 | 100 kilos |

By letter dated February 28, 1961, plaintiff forwarded to the collector of customs a certificate dated February 17, 1961, from the Department of the Navy, stating that procurement of the 130 kilos at bar "constitutes an emergency purchase of war material abroad by the Department of the Navy" and requesting that the material be admitted free of duty pursuant to title 10, U.S.Code, section 2383 (exhibit 7). It is agreed that this certificate is in the form required by title 19, C.F.R., section 10.104(c) (1). (R. 5). It is also agreed that "[t]he purchase of this merchandise after the dates of entry and importation thereof, pursuant to Contract N32–10067, dated January 24, 1961, constitutes an emergency purchase of war material by the Department of the Navy." (R. 5).

Plaintiff's exhibit 5 consists of a letter dated July 27, 1961, to the collector of customs at New York from the deputy commissioner, Bureau of Customs, stating as follows:

In view of the order and importation of this merchandise on December 1 and December 27, 1960, respectively, considerably before the date of contract, January 24, 1961, the Bureau is constrained to hold that this importation was not in pursuance of the contract in question, and there is, therefore, considerable doubt that free entry under provisions of section 10.104 (c) (1) of the Customs Regulations is appropriate even though a certificate in proper form has been submitted. It will be appreciated if this opinion will be transmitted to Premo Pharmaceutical Laboratories Inc.

Plaintiff's exhibit 3 consists of a letter dated August 16, 1961, to the Bureau in New York from the plaintiff containing the following statements:

\* \* \* We wish to explain the reason that this material was ordered in advance of the date of the contract:

a. In order to award the contract to us, the Military Medical Supply Agency required that we file a Form

'6' with the Food & Drug Administration. Our Form '6' could not be accepted until such time as we submitted a sample of the material to Dr. Joseph DiLorenzo of the Food & Drug Administration. In order to supply the sample of the material, we had to order it from our supplier.

b. It was necessary for us to test a quantity of the material in order to determine that it met the U.S.P. specifications.

c. Military Medical Supply Agency requires pre-acceptance samples * * * before they will make the award.

d. A quantity of the material must be tableted in order to set up a formulation which will produce tablets acceptable to the Military Medical Supply Agency.

There are several other reasons that we found it necessary to import the TETRACYCLINE HCl in advance of the date of the contract, but we do not wish to enumerate every one of them in this letter.

Our bid to the Military Medical Supply Agency was predicated on duty free entry. As a result, we obtained a certificate from Lt. Meyer of the Military Medical Supply Agency, requesting duty free entry * * * which certificate was forwarded to you in our previous correspondence.

Plaintiff's exhibit 2, consisting of a letter dated September 18, 1961, to the collector of customs from the deputy commissioner, states as follows:

A review of the Premo Pharmaceutical Laboratories, Inc., letter does not cause the Bureau to alter its original decision. Rather, the information contained in there would appear to justify our original conclusion. On page 2 of this letter the company seeks to explain the reason why the material in question was ordered in advance of the date of contract. This information appears to support the fact that it was imported primarily to facilitate the securing of the contract in question rather than pursuant to the terms of the contract.

In the second full paragraph on page 2 the company goes on to express their impression that the bid to Military Medical Supply Agency was predicated upon duty-free entry. I am sure that this is correct, but I fail to see how the fact of duty-free status for materials procured pursuant to a contract could have any effect on material imported prior to the signing of the contract.

Inasmuch as the additional information submitted in no way changes our original conclusion, the Bureau confirms its original opinion that the proferred certificate should be rejected and no refund of duties made as requested by the company.

Counsel for the plaintiff in its brief contends that the filing of the certificate from the Department of the Navy alone is sufficient to entitle the merchandise to free entry, citing in this connection from the Official Opinions of the Attorney General of the United States, volume 40, opinion No. 78, dated August 26, 1943. At page 283 thereof, the following is stated:

IMPORTATIONS OF WAR MATERIAL

When an administrative officer has determined that an importation is 'war material' within the meaning of the act of June 30, 1914, and Executive Order No. 9177, the importation is entitled to duty-free entry. The customs officials are entitled to rely upon the determination embodied in the administrative officer's certificate and are not required to make an independent determination.

THE SECRETARY OF THE TREAS-
URY

MY DEAR MR. SECRETARY:
Your letter dated August 13, 1943, re-
quests my opinion whether Collectors
of Customs are required to determine
whether importations which are made
pursuant to the provisions of the Act
of June 30, 1914, 38 Stat. 399, set
forth in U.S.C., title 34, sec. 568, and
pursuant to Executive Order No. 9177,
are, in fact, importations of war ma-
terial entitled to duty-free entry, or
whether the Collectors may rely upon
a certificate made in accordance with
Section 2 of Executive Order No. 9177.

It is my opinion that when an of-
ficer authorized to do so has made a
certificate in the form set forth in
Section 2 of Executive Order No. 9177,
the Collector of Customs may permit
such material to be entered duty-free
on the basis of the certificate alone.

The provision of the Act of June 30,
1914, 38 Stat. 399, set forth in U.S.C.,
title 34, sec. 568, provides as follows:

"The Secretary of the Navy is au-
thorized to make emergency purchases
of war material abroad: *Provided,*
that when such purchases are made
abroad, this material shall be admitted
free of duty."

By Executive Order No. 9177 the Sec-
retary of the Treasury, the Secretary
of Agriculture and the Reconstruction
Finance Corporation were authorized
to exercise the functions, powers and
duties vested in the Secretary of the
Navy by the above-quoted provision of
the Act of June 30, 1914. Section 2
of Executive Order No. 9177 provides
as follows:

"The Commissioner of Customs, with
the approval of the Secretary of the
Treasury, shall issue regulations gov-
erning the entry and admission free of
duty of articles as to which an officer
or the agency designated in section 1

of this order shall make a certificate
to him in the following form:

" 'The procurement of this material
constituted an emergency purchase of
war material abroad and it is accord-
ingly requested that such material be
admitted free of duty pursuant to the
Act of June 30, 1914 (34 U.S.C. 568)
and Executive Order No. 9177.' "

The Act of June 30, 1914 and Execu-
tive Order No. 9177 make it the func-
tion of the officers entitled to make
duty-free importations to determine
whether such material is war material
within the meaning of the Act of June
30, 1914. When any such officer has
determined that the material being im-
ported is a war material entitled to du-
ty-free entry under the statute and
has executed the certificate provided
for in Executive Order No. 9177, the
customs officials are not required to
make an independent determination of
the matter, but may rely upon the de-
termination made as embodied in the
certificate referred to.

Respectfully,
FRANCIS BIDDLE.

■■■ We are not in accord with the
conclusion of counsel for the plaintiff
herein that the mere filing of the certifi-
cate of "an emergency purchase of war
material abroad," by itself, was suffi-
cient to accord the plaintiff free entry
in this case of the imported merchandise.
While the opinion of the Attorney Gen-
eral, as above indicated, states that cus-
toms officials are not required to make
an independent determination of the
matter when an authorized officer has
determined that the material being im-
ported is a war material, neither that
opinion nor any other authority, statu-
tory or otherwise, so far as we have been
able to determine, precludes customs of-
ficials from examining the facts to de-
termine whether the merchandise has,
in fact, been purchased "abroad." Ex-
ecutive Order No. 9177, supra, states
that customs officials *may* rely upon the

determination made by the certifying officer as embodied in the certificate, a relevant factor in the allowance of free entry coming within the terms of exemption from duty of "purchasers of war material abroad." This, in our opinion, is so especially where, as here, the customs regulations have not been complied with, as noted below.

 While it is agreed that plaintiff's exhibit 7 is the proper form of certificate required by the regulations (19 C.F.R. 10.104(c) (1)), plaintiff did not comply and (because of the fact that the merchandise here imported was not made pursuant to an existing Government contract but was imported prior to a contract being entered into) could not comply with two other requirements of the regulations. The regulations require first that the certificate, if on a paper other than the entry, be attached to the entry (19 C.F.R. 10.104(c) (4)), and secondly, that all materials, for which free entry is claimed under title 10, U.S. Code, section 2383, supra, be entered for consumption in the name of the Government department whose representative executed the certificate, unless exemption from this requirement is specifically authorized by the Bureau of Customs (19 C.F.R. 10.104(e)). In the case at bar, no such exemption was sought or granted. It further appears that the contract entered into between the parties (plaintiff's exhibit 6–B, page 4) dated January 24, 1961, which was after the date of importation of the involved merchandise, contained therein specific provisions for claiming duty-free entry for material used in the performance of said contract, reading in part as follows:

* * * All shipping documents submitted to Customs covering such emergency purchases of war material abroad for which duty free entry is to be claimed shall bear the notation "United States Navy-Duty-Free Entry, To Be Claimed under 10. U.S. Code 2383. Collector of Customs kindly notify Lt. Robert E. Meyer, MSC, USN, Military Medical Supply Agency, 29th Street and 3rd Avenue, Brooklyn 32, New York, Bldg. #2 upon arrival of *shipment* at the port of entry." [Italics ours.]

It, accordingly, appears that the contract entered into herein contemplated duty-free entry for material imported pursuant to its terms and at a date subsequent to the effective date of the contract. The required notation above referred to did not appear on any of the shipping documents relating to the merchandise here in question submitted to customs officials.

Plaintiff, as indicated in plaintiff's exhibit 3, supra, alleges that the necessity for testing and tableting samples of tetracycline hydrochloride to the satisfaction of the Navy, before the latter would award a contract, required the plaintiff to order the merchandise in question in advance of the contract date. This allegation, in our opinion, does not meet the issue here presented, so as to support plaintiff's claim but rather underlines the fact that the merchandise at bar was imported, not on behalf of the Government or pursuant to a Government supply contract, but that the importation was made by and on behalf of the plaintiff in this case to bid on a Government contract. This factor, in our opinion, is the determinative element in resolving the issue before us.

Plaintiff's further contention in this case that the sequence of events in this transaction is of no consequence to the granting of free entry is not justified by the clear-cut language of the statute which requires as a condition for free entry of imported merchandise that the military department involved make the purchase *abroad*. Where, as in this case, the material under consideration is already in this country at the time the contract was entered into for the purchase of material by the military department, the qualifying condition for free entry of the merchandise has not been met.

Plaintiff, in support of its claim herein, directs our attention to the holding of the court in Louis Goebel and F. L. Kraemer & Co. v. United States, 46 Cust. Ct. 273, C.D. 2269. In our opinion, the *Goebel* case, supra, is not pertinent in the disposition of the issue herein involved. The merchandise there in question concerned certain giraffes which were entered duty free under the provisions of paragraph 1607 of the Tariff Act of 1930 as wild animals intended for exhibition in zoological collections and not for sale or profit. The collector in the *Louis Goebel* et al. case, supra, refused free entry of the giraffes in dispute, since the facts in that case established that the giraffes were imported without being designated for a particular zoo, and then destination was determined only subsequent to importation. It appeared that originally two giraffes each were designated for the Honolulu zoo, San Francisco zoo, and the Los Angeles zoo. After arrival in this country, changed instructions were given by the party ordering the giraffes that two giraffes were to be delivered each to the Honolulu zoo, Houston zoo, and to the San Diego zoo. The collector in the *Louis Goebel* case, supra, on liquidation decided that there was noncompliance, as to the involved four giraffes, with the requirement, under section 10.75 of the Customs Regulations, that with the entry there shall be filed a declaration showing that the animals in question delivered to the San Diego and Houston zoos, "were specially imported *pursuant to negotiations conducted prior to importation*" [emphasis supplied by the court]. In sustaining the protest and holding the giraffes to be free of duty under paragraph 1607 of the tariff act, the court in the *Louis Goebel* case, supra, held in effect that ·if, in fact, the giraffes in question were intended to be exhibited at *a* zoo, it made no difference that no specific zoo was in mind at the time of importation, that is, even though the particular zoos to which the involved animals were to be delivered were not chosen until after importation. The cited case, however, is inapposite to that ·here under consideration. There, the sequence of events, that is, the date of acquisition of the animals by the importer, entry, and subsequent delivery of the animals to the zoos had no bearing on the issue of "intent." The plaintiff, in the case at bar, contends that the certificate of the appropriate military official (plaintiff's exhibit 7) together with the "explanation" given to customs officials in plaintiff's exhibit 3 "clearly establishes that the merchandise was at all times intended to be, and actually was, earmarked for a military department. In the *Louis Goebel* case, supra, in the resolution of the issue therein involved, it made no difference whether the importer acquired the animals pursuant to a contract with a particular zoo or whether he simply purchased and imported them for the purpose of later disposing of them for exhibition in a zoo, for paragraph 1607 does not require that the zoo purchase the animals *abroad*. Here, however, the involved tetracycline hydrochloride was not purchased *abroad* by the military department to whom it was sold after importation by the plaintiff and, in our opinion, this factor denies the plaintiff the benefit of free entry of the merchandise in accordance with the provision of the Code, title 10, section 2383.

While it may be true that the rule of "liberal construction" prevails in favor of the importer when there are elements of doubt in connection with the assessment of duty on imported merchandise (United States v. Greek Orthodox Church of Evangelismos, 49 CCPA 35, C.A.D. 792), the rule also appears to be that, as stated in the case of George Becker v. United States, 28 Cust.Ct. 404, 405, Abstract 56405:

> When the statute grants a privilege of free entry to dutiable merchandise, the language thereof must be construed most strongly in favor of the grantor.

In the above connection, we are of opinion that there is no element of "doubt" in the case so as to permit the plaintiff to prevail. Plaintiff's exhibit 1, the "final" letter from the office of the collector of customs to the importer herein on the matter indicates clearly the decision of that officer that the merchandise in question is not entitled to free entry.

In the light of the circumstances surrounding the importation at bar, as disclosed by the record herein, we are of the opinion that the plaintiff's claim in this case for free entry of the imported merchandise is without merit. Accordingly, the protest claim in this case for free entry of the involved merchandise is overruled. The merchandise in question is properly dutiable at the rate of 12½ per centum ad valorem, as assessed, under paragraph 5 of the Tariff Act of 1930 under the provision therein for "medicinal preparations." Judgment will issue accordingly.

OLIVER and RAO, JJ., concur.